John E. WALKER, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

AMERICAN STEVEDORES, INC., Third-Party Defendant.

Civ. A. No. 18371.

United States District Court E. D. New York.

May 16, 1961.

Kane, Grae & Agar, Staten Island, N. Y., by Farrell M. Kane, Staten Island, N. Y., of counsel, for plaintiff.

Elliott Kahaner, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., by Lawrence J. Galardi, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for defendant and third-party plaintiff.

George J. Conway, New York City, by Philip J. O'Brien, New York City, of counsel, for third-party defendant.

BYERS, District Judge.

This is a federal tort claim action in which the plaintiff seeks to recover from the United States an award of damages for physical injuries suffered by him on January 12, 1956 while he was working at Pier 3, Brooklyn Army Terminal. He was employed by American Stevedores, Inc., the third-party defendant.

The injury was caused by the falling of a metal object weighing about 125 pounds, which struck his foot causing the injuries complained of, which were serious and partially disabling.

The plaintiff and a companion [Galgano] were engaged in unloading the contents of a freight car containing boxes, crates and cartons of governmental property in the "B" end of the car. The car number was RDG 100431 and it was 40'6" long, 8'6" wide and 8'7½" high. The time of the accident was 2:30 p. m.

The unloading was initiated by the breaking of the seals on the side door of the freight car, the removal of such of the contents as were inside the door, and this was accomplished without incident; these men then started to lift down the boxes and crates at the "B" end, and take them to the car door whence they were removed by hi-lo trucks.

They had progressed in this task until they reached the second tier from the end of the car; the top of which was about 8' above the floor.

The testimony showed that the plaintiff so manipulated one of the crates or boxes on the top of the tier that he could ease it down for convenient handling on the floor, and while so engaged with a given box, the offending metal object fell and struck his foot. It will be realized that both his hands were engaged in handling the box, and therefore the fall of the metal object could not very well be fended off in the short space of time during which he was aware of what was happening.

This recital is in accordance with the testimony of plaintiff and Galgano, and is not the subject of opposing testimony.

■ The right of the plaintiff to recover against the United States arises from the fact that the car was stowed at the U. S. Army Columbus Depot, Columbus, Ohio. Therefore the Government was both the consignor and the consignee and responsibility for correct stowage rested upon it.

The metal object is thus described in the testimony of the Government witness Kibler:

"One bundle Cutting Steel Edges Grader or Scraper."

There is no testimony showing how it was wrapped, if it was wrapped at all, or that it was strapped or chocked in a firm position on top of any box or crate as it should have been. There is testimony that the customary practice was to place such an object on the floor of the car with proper lashing.

When the supporting box or boxes were moved, this object fell of its own weight and caused the plaintiff's injury. The foregoing is a finding.

In this connection, the Government argues that the fall of the metal object may have been from behind the case that the plaintiff was moving, and not necessarily from its top. That is not regarded as an important or demonstrable contention.

There is no testimony to justify the inference that the plaintiff can be charged with contributory negligence in the manner in which he sought to ease down the box which supported the offending element, for it was the same method that he had pursued during the entire time that he was working in the "B" end of the car. Moreover, there was nothing in the appearance of the tier of crates on which he was working, to warn him of the possible presence of a moveable and hidden object resting above the eight foot level.

■ It is therefore found that the plaintiff was not negligent, in a contributory sense.

The only critical question in the entire case is whether the Government's third-party claim against the stevedore has been demonstrated by the evidence. That turns upon several considerations:

(a) Should the stevedore have supervised or inspected the progress of the work being done by the plaintiff and Galgano, as they removed the cases tier by tier from the "B" end of the car?

The stevedoring contract is U. S. Exhibit I, dated January 10, 1955 between the United States and American Stevedores, Inc., for "Stevedoring, car, barge and truck loading and unloading and Carpentry services at: Brooklyn Army Base Amount Indefinite."

Item 2 of Clause 1 has to do with car, barge and truck loading and unloading, and it is therein stated that the contractor's duties shall be to "perform efficiently and expeditiously, all work required to load or unload freight cars * * *."

Clause 12 [p. 37] deals with liability and insurance, and under it the contractor shall be liable to the Government for loss of property "or bodily injury to or death of persons occasioned either in whole or in part by the negligence or fault of the Contractor, his officers, agents, or employees in the performance of work under this contract. * * *"

Subdivision *b.* of this clause deals with circumstances under which the contractor shall not be so liable to the Government:

"(1) If the * * * failure or defect of the gear or equipment furnished by the Government contribut-

ed jointly with the fault or negligence of the Contractor in causing such damage, injury or death, and the Contractor, its officers, agents and employees, by the exercise of due diligence, could not have been [sic] discovered such * * * defect of gear or equipment, or through the exercise of due diligence could not otherwise have avoided such damage, injury or death."

The Government's Exhibit J is the manual of applicable regulations, and the only relevant part is:

"Section K

"Accident Prevention.

"1. General Provisions:

"a. Contractors will:

"(1) Direct the attention of all personnel under their jurisdiction to the following:

"(a) Responsibility for accident prevention."

The inquiry therefore is whether within the foregoing exhibits it can be seen that the contractor failed to live up to its obligations.

The special circumstances here have been borne in mind in connection with the numerous cases cited in the Government's brief; that document testifies to the diligence with which the Government's cause has been presented.

It is to be remembered that there was nothing in the appearance of the load which this car carried, so far as the method of stowage was concerned, to suggest such a lurking hazard as the metal object proved to be. The plaintiff and Galgano simply proceeded to ease down from the top the boxes and cases, and as the work progressed there was nothing to cause them to be apprehensive of the possible presence of an unsecured element at the top of an inner tier. It is complained that no flashlight was used or other artificial means of illumination brought to bear as the work progressed in the interior of this car. The Government's witness Keeler was frank enough

to say that he could not recall seeing lights in a railroad car in the Army Base in the afternoon; this is sufficient to indicate that no such recognized requirement was present, which means that this aspect of the case presents no basis for arguing that the stevedore did not meet its contractual duties.

The question therefore comes down to whether the stevedore's foreman should have entered the car and supervised the work of these two men as it proceeded.

There is no testimony that this was required nor does common sense so argue. These were experienced men and they were dealing with a conventional task; it may be further doubted that even if the foreman had been present as these men were about to reach the two end tiers of boxes, he could be reasonably expected to anticipate the possible presence of the metal bundle which caused the plaintiff's injury.

None of the cases cited by the Government involves such a situation or one which is remotely similar to it, and consequently the language appearing in certain of the opinions cannot be thought to bear upon this particular situation. There was nothing faulty in the equipment used by the men nor in the methods employed by them in performing their tasks, as was true in most of the cases cited by the Government. This injury was not occasioned by anything that was within the stevedore's control but by the faulty method of stowage employed by the Government, and no fair and reasonable duty of special inspection by the foreman of the gang could be required of him as the work of unloading was going forward.

■ The Court therefore finds that the plaintiff's injury was caused by a latent condition created by the Government which no reasonable amount of inspection would have brought to light prior to the happening of which the plaintiff complains.

A discussion of any considerable number of cases upon which the Government relies would necessarily prolong the disposition of this case, because of their factual remoteness to the circumstances under consideration. The only case involving similar circumstances is Crews v. Illinois Terminal R. Co., Mo.App., 260 S. W.2d 765.

■ It is therefore found and concluded that the third-party cause as pleaded by the Government has not been sustained by evidence tending to show that the stevedore did not "efficiently and expeditiously" perform its duties, or that it failed to exercise due diligence; the third-party complaint is therefore dismissed on the merits.

### The Plaintiff's Injuries

The testimony establishes that the plaintiff suffered, as a result of being struck by the metal object which has been described, fractures of three metatarsal bones of the right foot with displacement and imperfect union, and also a fracture without displacement of a fourth metatarsal bone, with the result that the plaintiff's foot is somewhat deformed and there is now an overlapping of the bones. This condition caused pain and suffering for a time, and there is even now intermittent pain which results in a tendency on the plaintiff's part to shuffle his right foot.

■ The percentage of disability varies, according to the medical testimony, from 15 to 35%. The Court concludes that there is a disability of about 20%.

He has not been deprived of his earning capacity, however, and now operates a motor vehicle in connection with stevedore operations, at a rate of pay which is above that which he was earning at the time of his injury.

Having in mind the elements of pain and suffering and disability, it is thought that the plaintiff is justly entitled to an award of $6,000 in this connection. The medical expenses amounted to $120 and loss of earnings is the agreed sum of $2,-010. The total award to the plaintiff is thus $8,130, for which sum judgment is hereby awarded to him.

If additional findings are desired, they may be settled on notice.